### SULLIVAN v. CITY COUNCIL OF CHARLESTON

#### (130 S. E., 872)

1. MUNICIPAL CORPORATIONS—ACT AUTHORIZING ISSUE OF COUPON NOTES HELD UNCONSTITUTIONAL AS NOT REQUIRING VOTE.—Act March 14, 1925 (34 St. at Large, p. 659), authorizing city of Charleston to issue coupon notes to refund outstanding indebtedness, *held* unconstitutional under Const. Art. 2, § 13, requiring vote of majority of freeholders to authorize issue of bonds.

2. MUNICIPAL CORPORATIONS—ACT AUTHORIZING ISSUE OF COUPON NOTES HELD UNCONSTITUTIONAL UNDER LIMITATION ON INDEBTEDNESS.— Act March 14, 1925 (34 St. at Large, p. 659), authorizing city of Charleston to issue coupon notes to refund outstanding indebtedness, *held* unconstitutional under Const. Art. 8, § 7, and Article 10, § 5, limiting bonded indebtedness of cities.

3. STATUTES—ACT AUTHORIZING CITY TO ISSUE NOTES HELD NOT LOCAL LAW EXTENDING CHARTER.—Act March 14, 1925 (34 St. at Large, p. 659), authorizing city of Charleston to issue coupon notes to refund outstanding indebtedness, *held* not violation of Const. Art. 3, § 34, subd. 2, as local law extended charter.

4. STATUTES—ACT AUTHORIZING CITY TO ISSUE BONDS HELD NOT SPECIAL LAW, ENACTED WHERE GENERAL LAW COULD BE MADE APPLICABLE.— Act March 14, 1925 (34 St. at Large, p. 659), authorizing city of Charleston to issue notes to refund outstanding indebtedness, *held* not violative of Const. Art. 3, § 34, subd. 9, prohibiting special law where general law can be made applicable.

Original application by Lucy C. Sullivan for an injunction against the City Council of Charleston. Injunction granted.

*Messrs. Nathans & Williams*, for petitioner, cite: *Bonded indebtedness of municipalities limited:* Const. 1895, Art. II, Sec. 13, and Art. VIII, Sec. 7; 103 S. C., 10; 113

S. C., 407. *Power of Council to contract debt:* 73 S. C., 91; Const. 1895, Art. VIII, Sec. 3. *Special laws amending charters prohibited:* Const. 1895, Art. III, Sec. 34, Subsection II. *Municipalities classified:* Const. 1895, Art. VIII, Sec. 1. *No special law where general law applicable:* 114 S. C., 116; Const. 1895, Art. III, Sec. 34, Subsection IX. *Method of bonding cities of over forty-five thousand inhabitants:* Civ. Code 1922, Sec. 4644.

*Mr. John I. Cosgrove,* for respondent, cites: *Notes not part of bonded debt:* 103 S. C., 10; 5 S. C., 156. *Cases distinguished:* 73 S. C., 89; 113 S. C., 407. *Municipalities authorized to borrow money for corporate purposes:* Const. 1895, Art. VIII, Sec. 3; 53 S. C., 259. *Corporate purposes:* 115 S. E., 202. *Special provision in general law:* 61 S. C., 205.

November 24, 1925.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an application to the Supreme Court in the exercise of its original jurisdiction for an injunction. The petition is as follows:

"The petition of Lucy C. Sullivan respectfully shows:

"First. That, at the times hereinafter mentioned, the respondent, the City Council of Charleston, was and is now a municipal body corporate.

"Second. That the petitioner, Lucy C. Sullivan, is a resident freeholder and taxpayer in the City of Charleston, Charleston County, S. C.

"Third. That by an Act of the General Assembly of the State of South Carolina approved the 14th day of March, A. D. 1925, entitled 'An Act to authorize the City Council of Charleston to fund certain of its outstanding indebtedness existing at this time by the issuance of not exceeding Three Hundred and Sixty Thousand ($360,000.00) Dollars of coupon notes of the City Council of Charleston, and to

provide a penalty for the diversion of the proceeds of said notes from the purposes for which issued," the City Council of Charleston was authorized and empowered to issue its coupon notes not exceeding Three Hundred and Sixty Thousand ($360,000.00) Dollars, the proceeds thereof to be deposited with the City Treasurer as a replacement of funds heretofore taken from the City Treasurer by City Council and used for purposes other than those for which the taxes represented thereby were levied and collected. A copy of said Act is hereto attached and made part and parcel hereof, marked Exhibit A.

"Fourth. That under the authority of said Act, by ordinance ratified the 9th day of June, 1925, the City Council of Charleston directed the issuance of notes of the City Council of Charleston in the sum of Three Hundred and Thirty Thousand ($330,000.00) Dollars, bearing date the 10th day of June, 1925, in denominations of One Thousand ($1,000.00) Dollars and Five Hundred ($500.00) Dollars, each, bearing interest at the rate of 4½ per cent. per annum, payable semiannually, and maturing in annual series or installments of Sixteen Thousand, Five Hundred ($16,-500.00) Dollars a year, the first installment of which shall be due and payable one year from their date and the last installment twenty years after the date thereof; and in and by said ordinance it was provided that there should be levied and collected on all taxable property within the City of Charleston, a sum sufficient to pay the interest and principal of said notes as they respectively mature; and in and by said ordinance it was provided that the proceeds of said notes when sold shall be deposited with City Treasurer as the replacement of funds heretofore taken from City Treasurer by City Council and used for purposes other than those for which the taxes represented thereby were levied and collected, which said funds are hereby declared to be as follows:

Commissioners of Public Schools, Charleston,
    S. C., Fund ......................$180,852,55
Sewerage Bond Fund .................... 86,115.87
New Bridge Fund ...................... 65,765.31

                             $332,733.73

"Fifth. That, in pursuance of said ordinance, the City Council of Charleston is about to issue, and will issue, unless restrained by this Honorable Court, the said notes directed to be issued under said ordinance, and as a taxpayer in the City of Charleston and owner of property therein this plaintiff will be charged with the payment of the annual tax provided to be levied for the payment of the principal and interest of said notes, and will have no remedy at law.

"Sixth. That the issuance of said notes will be unconstitutional and illegal in that:

"(1) The said notes, although termed such, will in reality create a bonded indebtedness of the City Council of Charleston, and are about to be issued without a petition from a majority of the freeholders asking for an election on the question of the issuance of the same and without such election being held in violation of the provisions of Article 2, § 13, and Article 8, § 7 of the Constitution of the State of South Carolina, 1895.

"(2) The present existing bonded indebtedness of the City Council of Charleston now exceeds 8 per centum of the assessed value of the taxable property therein, and the issuance of said notes will further increase said indebtedness in violation of the provisions of Article 8, § 7, of the Constitution of the State of South Carolina. 1895.

"(3) The issuance of said notes will be for no corporate purpose of said municipality, being issued for the replacement in the Treasury of City Council of funds collected for special purposes by taxation in previous years and used for purposes other than those for which levied and will be in violation of the provisions of Article 10, § 5, of the

Constitution of the State of South Carolina, 1895, which authorizes cities to assess and collect taxes for corporate purposes only.

"(4) The said Act is in violation of the provisions of Article 3, § 34, Subdivision 2, in that it enacts a local law extending the charter of the City Council of Charleston; the said corporation under its charter having no powers to contract indebtedness for the purposes set forth in said Act.

"(5) The said Act of the General Assembly, authorizing the issuance of said notes, is in violation of the provisions of Article 3, § 34, Subdivision 9, of the Constitution of the State of South Carolina, 1895, in that it enacts a special law where a general law could have been enacted applicable to the subject of the Act.

"Wherefore, plaintiff prays that an injunction be issued restraining the said respondent from issuing and selling the notes hereinabove referred to, and for such other and further relief as may be just in the premises."

The petition was verified.

On hearing the petition, this Court issued a rule requiring the respondent to show cause why the injunction should not be granted.

The following is a copy of the Act (34 Statutes at Large, page 659) in question:

"An Act to authorize the City Council of Charleston to fund certain of its outstanding indebtedness existing at this time by the issuance of not exceeding Three Hundred and Sixty Thousand ($360,000.00) Dollars of coupon notes of the City Council of Charleston, and to provide a penalty for the diversion of the proceeds of said notes from the purposes for which issued.

"Section 1. Be it enacted by the General Assembly of the State of South Carolina: That the City Council of Charleston, Charleston County, South Carolina, is hereby

authorized and empowered to issue its coupon notes not exceeding Three Hundred and Sixty Thousand ($360,000.00) Dollars, the said notes to be in such denominations, bear such rate of interest and be payable in such annual series or installments, as may be fixed by City Council, the last of which shall be payable not more than forty (40) years after the date thereof; the proceeds thereof to be deposited with City Treasurer as a replacement of funds heretofore taken from City Treasurer by City Council and used for purposes other than those for which the taxes represented thereby were levied and collected.

"Sec. 2. There shall be levied and collected annually as other city taxes are collected a sum sufficient to pay the interest and principal on said notes as they respectively mature.

"Sec. 3. When said funds shall be so replaced, if they shall be diverted from the purpose for which deposited with City Treasurer, it shall be a misdemeanor for which the Mayor and City Treasurer shall be liable, and which shall be liable, and which shall be punishable upon conviction by imprisonment of not less than one year or more than five years and a fine of not less than one thousand dollars or more than five thousand dollars, both or either in the discretion of the Court.

"Sec. 4. The notes shall be signed by the Mayor and City Treasurer, attested by the City Clerk under the corporrate seal of the City of Charleston, and the interest coupons attached to said notes shall be signed with the *facsimile* signature of the City Treasurer lithographed or engraved thereon.

"Sec. 5. The notes shall be sold after such advertisement thereof as may be directed by City Council in the ordinance authorizing the issuance of the same.

"Sec. 6. All Acts or parts of Acts inconsistent herewith, are hereby repealed.

"Sec. 7. This Act shall take effect immediately upon its approval by the Governor.

"Approved the 14th day of March, A. D. 1925.

"THOS. G. MCLEOD, *Governor.*"

The following is a copy of the Ordinance:

"An Ordinance to authorize the issuance of coupon notes of the City Council of Charleston to the amount of ($330,000.00), authorized by the Act of the General Assembly of the State of South Carolina, entitled 'An Act to authorize the City Council of Charleston to fund certain of its outstanding indebtedness existing at this time by the issuance of not exceeding Three Hundred and Sixty Thousand Dollars of coupon notes of the City Council of Charleston; and to provide a penalty for the diversion of the proceeds of said notes from the purpose for which issued,' approved the 14th day of March, 1925.

"*Whereas,* Under an Act of the General Assembly of the State of South Carolina, entitled 'An Act to authorize the City Council of Charleston to fund certain of its outstanding indebtedness existing at this time by the issuance of not exceeding Three Hundred and Sixty Thousand ($360,-000.00) Dollars of coupon notes of the City Council of Charleston, and to provide a penalty for the diversion of the proceeds of said notes from the purpose for which issued,' City Council of Charleston was authorized and empowered to issue its coupon notes not exceeding Three Hundred and Sixty Thousand ($360,000.00) Dollars, the said notes to be in such denomination, bear such rate of interest, and be payable in such annual series or installments as may be fixed by the City Council, the last of which shall be payable not more than forty (40) years after the date thereof; the proceeds thereof to be deposited with City Treasurer as a replacement of funds heretofore taken from City Treasurer by City Council and used for purposes other than those for

which the taxes represented thereby were levied and collected; and,

"*Whereas,* The funds so taken from City Treasurer by City Council amount to the sum of $332,733.73 and it is desired to issue and sell notes in the sum of $330,000.00, the proceeds thereof to be deposited with City Treasurer to replace the same,

"Now, be it ordained by the Mayor and Aldermen of Charleston in City Council assembled:

"Section 1. That notes of the City Council of Charleston in the sum of Three Hundred and Thirty Thousand ($330,-000.00) Dollars be issued, bearing date of 10th day of June, 1925, said notes to be in denomination of $1,000.00 and $500.00 each, shall bear interest at the rate of four and one-half (4½) per cent. per annum, payable semiannually, shall mature in annual series or installments of $16,500.00 a year, the first installment of which shall be due and payable one year from their date and the last installment twenty years after the date thereof, and shall be payable at a bank in the City of New York, N. Y.

"Sec. 2. That the said notes shall be signed by the Mayor and City Treasurer, attested by the Clerk of Council under the corporate seal of the City of Charleston, and the interest coupons attached to said notes shall be signed with the *facsimile* signature of City Treasurer, lithographed or engraved thereon, and shall be in such form as may be approved by corporation counsel.

"Sec. 3. That the proceeds of said notes when sold shall be deposited with City Treasurer as the replacement of funds heretofore taken from City Treasurer by City Council and used for purposes other than those for which the taxes represented thereby were levied and collected, which said funds are hereby declared to be as follows:

Commissioners of Public Schools, Charleston
    S. C., Fund ........................$180,852.55
Sewerage Bond Fund ....................  86,115.87
New Bridge Fund .......................  65,765.31

    Total ........................$332,733.73

"Sec. 4. That there shall be levied and collected annually as other City taxes are collected, on all taxable property within the City of Charleston, a sum sufficient to pay the interest and principal of said notes as they respectively mature.

"Sec. 5. That the said notes shall be sold on a day fixed by City Treasurer in an advertisement of such sale published at least twice in *The News and Courier,* a newspaper published in the City of Charleston, S. C., and in the *Bond Buyer,* a publication published in the City of New York, N. Y.

"Ratified by order of City Council, this 12th day of June in the year of our Lord one thousand nine hundred and twenty-five, and in the one hundred and forty-ninth year of American Independence.

                        "THOMAS P. STONEY, *Mayor.*

"CLIFFORD THOMPSON, *Clerk of Council.*"

The return to the rule to show cause is as follows:

"The return of the City Council of Charleston, a body corporate, to the rule to show cause issued in the above entitled matter covering the issuance of coupon notes of the said City Council, respectfully shows:

"First. It admits the first, second, third, fourth, and fifth allegations of said petition.

"Second. It denies the allegations of the sixth paragraph of said petition and on the contrary alleges:

"(1) That the said notes will not create a bonded indebtedness of the City Council of Charleston, and that, therefore, the failure to file a petition and hold an election

on the issuance of the same would not be a violation of the provisions of the Constitution.

"(2) It admits that the existing bonded indebtedness of the City Council of Charleston now exceeds 8 per centum of the assessed value of taxable property therein, but denies that the issuance of said notes will further increase the said bonded indebtedness in violation of the provisions of the Constitution.

"(3) That the issuance of said notes will be for a corporate purpose of said municipality, being issued for the purpose of enabling the said municipality to meet its obligations to the Commissioners of the Public Schools of Charleston, to the holders of the sewerage bonds, and to the payment of its contribution to the building of the new bridge, to which it was pledged by ordinance.

"(4) That the said Act is not a local law extending the charter of the City Council of Charleston in violation of the provisions of the Constitution, but said Act merely enables the City Council of Charleston to issue its notes for the purpose of paying obligations which it had previously contracted, and which power was inherent in the municipality under its charter.

"(5) That no general law could have been enacted applicable to the subject of the Act, and, therefore, the special law was not in violation of the constitutional provisions.

"Wherefore, this respondent prays that the rule to show cause be dismissed.

"JOHN I. COSGROVE, *Corporation Counsel.*"

The return is verified.

Article 3, § 34, of the Constitution, Subdivision 9, is as follows:

"In all other cases, where a general law can be made applicable, no special law shall be enacted."

Article 2, § 13, of the Constitution, is as follows:

"In authorizing a special election in any incorporated city or town in this State for the purpose of bonding the same,

the General Assembly shall prescribe as a condition precedent to the holding of said election a petition from a majority of the freeholders of said city or town as shown by its tax books, * * * and the vote of a majority of those voting in said election shall be necessary to authorize the issue of said bonds."

Article 8, § 7, is as follows:

"No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein, and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town, as provided in this Constitution for such special elections; and unless a majority of such electors voting on the question shall be in favor of creating such further bonded debt, none shall be created:

"*Provided*, That this Section shall not be construed to prevent the issuing of certificates of indebtedness in anticipation of the collection of taxes for amounts actually contained or to be contained in the taxes for the year when such certificates are issued and payable out of such taxes."

Article 10, § 5, contains this provision:

"The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, * * * The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State shall never exceed eight per centum of the assessed value of all the taxable property therein. And no county, township, municipal corporation or other political division of this State shall hereafter be authorized to increase its bonded indebtedness if at the time of any proposed increase thereof the aggregate amount of its already existing bonded debt amounts to eight per centum

of the value of all taxable property therein as valued for State taxation."

1, 2   The following provisions of the Constitution of South Carolina show that the Act in question is unconstitutional: Article 2, § 13; Article 8, § 7; Article 10, § 5.

3, 4   The fourth and fifth grounds upon which the petitioner relies, in support of which she cites Article 3, § 34, Subdivision 2 and Subdivision 9, are overruled.

It is the judgment of this Court that the petition for an injunction be granted.

MESSRS. JUSTICES COTHRAN and MARION, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY, and CIRCUIT JUDGES FEATHERSTONE, WILSON, SHIPP, DEVORE, RICE, HENRY, MANN, TOWNSEND, DENNIS, and JOHNSON, concur.

MR. JUSTICES WATTS, and CIRCUIT JUDGES SEASE, BONHAM, and MAULDIN, and MR. SPECIAL CIRCUIT JUDGE WM. H. GRIMBALL, dissent.